# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

NAU HERNANDEZ, JOSE L. HERNANDEZ,
LUIS E. MARTINEZ, FRANCISCO VALLADOLID,
OSCAR F. CRUZ, HERBERTO RAMIREZ, and
SAUL MORALES,

     **Plaintiffs,**

  **v.**               **Case No. 05-C-303**

CITY WIDE INSULATION OF MADISON, INC.,
d/b/a Builder's Insulation,
CITY WIDE INSULATION CO. INC.,
MARK MURPHY,
ROBERT F. MURPHY,
TROY WETZEL, and
ALFONSO CASILLAS,

     **Defendants.**

---

## DECISION AND ORDER

   Plaintiffs, insulation installers, bring this action against City Wide Insulation of Madison

("CWI"), and its employees Mark Murphy, Robert F. Murphy, Troy Wetzel and Alfonso Casillas

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 et seq., alleging that

defendants failed to pay them overtime and retaliated against them when they complained

about such failure. Defendants Mark Murphy and Casillas now move for summary judgment

arguing that they are not employers within the FLSA. In addition, all defendants move for

partial summary judgment on plaintiffs' retaliation claim. Further, defendants object to

plaintiffs having added new allegations and arguments in their response to the motion.

Defendants assert that they have not had the opportunity to address the new material.

Plaintiffs, in turn, move to amend their pleadings to incorporate the new allegations.

   Insofar as they relate to defendants' motions, the facts may be easily summarized.

Plaintiffs worked for CWI installing insulation in new homes in the Germantown area. Initially

CWI paid them by the hour. At a certain point, the Carpenters Union ("union") became plaintiffs' bargaining representative. Sometime thereafter, CWI began paying plaintiffs by the job instead of by the hour. In October 2004, plaintiffs and other employees engaged in a work stoppage. In December 2004, CWI agreed to pay plaintiffs by the hour on a trial basis. Throughout their periods of employment, plaintiffs complained that CWI failed to pay them overtime. Plaintiffs contend that defendants retaliated against them for their complaints in various ways. I will state additional facts in the court of the decision.

I may grant defendants' motion only if there are no genuine issues of material fact and defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In considering the motion, I take all facts and inferences therefrom in the light most favorable to the plaintiffs. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

I first address whether Casillas and Mark Murphy are employers within the FLSA. Under the FLSA, only employers may be held liable for overtime violations, and an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Whether an individual is an employer is a question of law. Karr v. Strong Detective Agency, Inc., 787 F.2d 1205, 1207 (7th Cir. 1986). The FLSA contemplates several simultaneous employers each responsible for FLSA compliance. See Falk v. Brennan, 414 U.S. 190, 195 (1973); see also Braddock v. Madison County, 34 F. Supp. 2d 1098, 1107 (S.D. Ind. 1998).

To determine whether an individual is an employer, courts often utilize the "economic reality" test, a fact-based inquiry that is not rigid or formalistic. In applying the test courts often consider four factors: (1) whether the individual has the power to hire and fire; (2) whether he supervises and controls employee work schedules or conditions; (3) whether he

determines the rate and method of payment; and (4) whether he maintains employment records.[1]  See Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983); see also George v. Badger State Indus., 827 F. Supp. 584, 587 (W.D. Wis. 1993); Laurie E. Leader, Wages and Hours: Law & Practice §2.01A[2], at 2-15 (2006).  No one factor is dispositive.  Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988).  Rather, courts look at "the totality of the circumstances."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  The ultimate question is whether the individual had "supervisory authority over the complaining employee" and is "responsible in whole or part for the alleged violation."  Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. 1987); see also Freemon v. Foley, 911 F. Supp. 326, 331 (N.D. Ill. 1995) (explaining that so long as an individual "possesses control over the aspect of employment alleged to have been violated, the FLSA will apply to that individual").

Individuals may be employers even without the "continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control."  RSR Sec. Servs., 172 F.3d at 139.  Indeed, "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitation on control 'does not diminish the significance of its existence.'" Id. (quoting Donovan v. Janitorial Servs., Inc., 672 F.2d 528, 531 (5th Cir. 1982)); Carter v. Dutchess Comm. College, 735 F.2d 8, 13 (2d Cir. 1984) ("The fact that control over a worker may be qualified is not a sufficient factor, in and of itself, to place an employment relationship beyond the scope of the

---

[1]Although the Seventh Circuit has noted that courts should consider these factors where it is clear that some entity is an "employer" under the FLSA, and the question is which one, see Vaskike v. Peters, 974 F.2d 806, 809 (7th Cir. 1992), the factors are also useful when "the question is not which entity is an 'employer,' but whether a particular individual is also an employer."  Davis v. B & S, Inc., 38 F. Supp. 2d 707 (S.D. Ind. 1998).

Case 2:05-cv-00303-LA   Filed 07/14/06   Page 3 of 10   Document 115

FLSA."); Braddock, 34 F. Supp. 2d at 1107 (stating that "[t]he defendant's control over the relevant aspects of employment need not be exclusive"). Further, an individual's ability to hire managerial staff also indicates that the individual may exert sufficient control to be an employer. See Herman, 172 F.2d at 140 (stating that "the fact that he hired individuals who were in charge of the [other employees] is a strong indication of control") (citing Donovan v. Grim Hotel Co., 747 F.2d 966, 972 (5th Cir. 1984)).

Courts routinely conclude "that liability under the [FLSA] depends on the individual's high position within the company" as well as "the individual's exercise of control." Sandra F. Sperino, Chaos Theory: The Unintended Consequences of Expanding Individual Liability under the Family and Medical Leave Act, 9 Empl. Rts. & Employ. Pol'y J. 175, 197 (2005); see also Freemon, 911 F. Supp. at 331 (stating that corporate officers with "operational control" over an employing entity are employers). Indeed, "[t]he overwhelming weight of authority is that a corporate officer with operational control . . . is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." Agnew, 712 F.2d at 1511 (collecting cases). Thus, courts generally reject "the idea that a low-level supervisor within a company can be individually liable." Sperino, supra, at 198; see, e.g., Dole v. Continental Cuisine, Inc., 751 F. Supp. 799, 802 (E.D. Ark. 1990) (rejecting the argument "that any person who has any supervisory duties over other employees, no matter how minimal, becomes an 'employer' within the meaning" of the FLSA); Donovan v. Agnew, 712 F.2d 1509, 1513 (1st Cir. 1983) (stating that the FLSA's broad definition should not be taken literally because "it would make any supervisory employee, even though without any control over the corporation's payroll, personally liable for the unpaid or deficient wages of other employees"); Baird v. Kessler, 172 F. Supp. 2d 1305, 1311 (E.D. Cal. 2001) (noting that "Congress could not have intended to hold individuals personally liable for alleged violations of the FLSA when

those individuals cannot even control crucial aspects of the work environment such as when paychecks will issue, how many employees are necessary, and whether or not more employees could be hired").

Applying the above principles, I first ask whether Casillas is an employer. Considering the first of the four factors, Casillas could not fire employees but only make recommendations.[2] The parties dispute whether he had hiring authority,[3] but for purposes of the present motion, I will assume that he did. Thus, the first factor weighs slightly in favor of his being an employer. Casillas also had some control over plaintiffs' work schedules. Thus, the second factor weighs similarly. The third factor weighs against Casillas being an employer because he did not determine the rate or method of payment. The fourth factor also weighs against his being an employer because although he maintained employment records, his duties were clerical. He calculated amounts owed to employees, but not tax deductions, and he did not transmit taxes to government agencies or sign checks. Further, he shared his payroll-related duties with two clerical workers.

Based on the totality of the circumstances, I conclude that Casillas was no more than a low-level supervisor and thus not an employer. See, e.g., Dole, 751 F. Supp. at 802 (rejecting the argument "that any person who has any supervisory duties over other employees, no matter how minimal, becomes an 'employer' within the meaning" of the FLSA). As indicated, Casillas lacked firing authority and could not authorize overtime. His payroll

_____

[2]Plaintiffs claim that Casillas "told Nau Hernandez that he was fired." (PFOF ¶ 26.) However, there is no indication that Casillas could fire Hernandez on his own or that he participated in the decision-making process. Moreover, the record suggests that Casillas merely acted as an interpreter for Wetzel who does not speak Spanish. Defendants also dispute that they fired Hernandez.

[3]The record suggests that although Casillas recruited employees, Wetzel had to approve their hiring.

related duties were purely clerical, and he played no part in determining plaintiffs' wages or the method of payment. The latter fact is particularly significant because it indicates that he did not exert "control over the aspect of employment [the payment of appropriate wages] alleged to have been violated." Freemon, 911 F. Supp. at 331; see also Riordan, 831 F.3d at 694 (stating that an individual is an employer if he is "responsible in whole or part for the alleged violation"). Casillas was not responsible for the violation alleged in the present case.

Turning to Murphy, and considering the four factors, Murphy had the authority to hire and fire employees. (See Murphy Dep. at 15-17) (stating that he had the power to hire and fire Wetzel). Thus, the first factor weighs in favor of his being an employer. The second factor does not because Murphy did not supervise or control employee work schedules or the conditions of employment. As to the third factor, although Murphy was not solely responsible for determining the rates and method of payment, he definitely participated in such activity. See, e.g., Herman, 172 F.3d at 139 (stating that "[c]ontrol may be . . . exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitation on control does not diminish the significance of its existence"). Murphy developed software that he expected would assist Wetzel in determining installers' wage rates. (Ex. P2, Murphy Tr. 13; Ex. P2, Wetzel Tr. 50). He also suggested that Wetzel limit labor expenditures to twelve percent of the gross revenue generated by a job and paid him commissions based on the degree to which he succeeded. Thus, Murphy influenced the amount that Wetzel paid the installers. (See PFOF ¶¶ 2, 6.) Further, Murphy had the authority to sign paychecks. See Herman, 172 F.3d at 141 (stating that one relevant consideration in determining whether an individual is an employer is "whether [he] had the authority to sign paychecks throughout the relevant period"). Thus, the third factor weighs in

favor of Murphy being an employer.  As to the final factor, Murphy did not maintain employment records.

Based on the totality of the circumstances, I conclude that Murphy is an employer within the FLSA.  He had the authority to hire and fire managerial employees such as Wetzel.  See Herman, 172 F.3d at 140 (stating that "the fact that he hired individuals who were in charge of the [other employees] is a strong indication of control").  The fact that he exerted control over the method and rate of payment is particularly significant because this is the aspect of employment that plaintiffs allege was violated.  Plaintiffs claim that defendants paid them less than the law required and Murphy was responsible for how much plaintiffs were paid.  See Riordan, 831 F.2d at 694 (indicating that an individual is an employer if he is "responsible in whole or part for the alleged violation"). Further, as president of CWI, Murphy was the final decisionmaker on day-to-day matters at the corporate level, such as whether branch offices could make large purchases. See Agnew, 712 F.2d at 1511 (stating that "[t]he overwhelming weight of authority is that a corporate officer with operational control . . . is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages").

Defendants emphasize that Murphy had limited contact with CWI's corporate office and little involvement with the Germantown branch office.  However, as previously indicated, to be liable as an employer, it is only necessary that an individual exert control over the aspect of employment alleged to have been violated.  See Riordan, 831 F.3d at 694.  As explained above, Murphy exerted sufficient control over this activity to be liable as an employer under the FLSA.  The fact that he might have shared responsibility for the violation with others, such as Wetzel, does not make him any less an employer.  Braddock, 34 F. Supp. 2d at 1101

(stating that an individual's control over the relevant aspects of employment need not be exclusive in order to conclude that the individual is an employer).

Turning to defendants' motion concerning plaintiffs' retaliation claim, defendants point out that in responding to their motion plaintiffs assert that they engaged in a variety of protected activities which they did not previously allege. These include making certain verbal complaints, engaging in a work stoppage, designating the union as their representative, signing NLRB affidavits, and distributing handbills. Defendants also point out that in their response plaintiffs allege a number of adverse employment actions not previously identified, including lowering plaintiffs' wages, assigning plaintiffs inferior equipment and more difficult jobs, and sending them to undesirable locations. Plaintiffs agree that they have asserted new material but state that they are justified in adding it to the case because they did not learn of it until they engaged in discovery. Pursuant to Fed. R. Civ. P. 15(b), they request permission to constructively amend their complaint to add the new material.

A party cannot successfully invoke Rule 15(b) unless issues not raised by the pleadings "are tried by express or implied consent of the parties," and in the present case the defendants did not expressly or impliedly consent to address the new allegations and arguments. Plaintiffs argue that by asking certain deposition questions and making certain objections to plaintiffs' discovery requests, defendants' impliedly consented to try all of the new issues. However, implied consent cannot be inferred merely because a party makes a discovery inquiry or objections related to the issue. See Mo. Hous. Dev't Comm'n v. Brice, 919 F.2d 1306, 1315-16 (8th Cir. 1990) (stating that discovery inquiries regarding a matter in a pleading "do not amount to 'implied' consent" under Rule 15(b)). Moreover, defendants' objections to the requests for production are worded too generally to infer that defendants were impliedly consenting to address the new material produced by plaintiffs. See Carlisle

Equip. Co., v. U. S. Sec'y of Labor & Occupational Safety, 24 F.3d 790, 795 (6th Cir.1994) (explaining that to establish implied consent in the context of Rule 15(b), "it must appear that the parties understood the evidence to be aimed at the unpleaded issue"); Yellow Freight Sys., Inc. v. Martin, 954 F.2d 353, 358 (6th Cir. 1992) (stating that under Rule 15(b), the court must examine "whether the employer knew what conduct was in issue and had an opportunity to present his defense"). Thus, plaintiffs may not amend their complaint under Rule 15(b).

However, I will allow plaintiffs to amend their complaint pursuant to Fed. R. Civ. P. 15(a), which authorizes me to permit an amendment "when justice so requires." Under Rule 15(a), "leave shall be freely given" when justice requires, and courts should deny requests to amend only if there is undue delay, bad faith, dilatory motive, prejudice, or futility. Ind. Funeral Directors Ins. Trust v. Trustmark Ins. Corp., 347 F.3d 652, 655 (7th Cir. 2003). In the present case, plaintiffs do not act in bad faith or out of a dilatory motive, and I cannot conclude that their proposed amendments are futile. While amendments cause some delay, "delay alone is not a sufficient reason for denying leave," 6 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1488, at 659 (2d ed 1990), and defendants will not be prejudiced by it. However, to insure that defendants have an opportunity to respond to plaintiffs' new material, I will permit them to engage in any additional discovery that they wish and to file any new motions, dispositive or otherwise. Therefore, I will deny their summary judgment motion on the retaliation issue without prejudice. This approach will serve the purpose of Rule 15 which is to "to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." In re Prescott, 805 F.2d 719, 725 (7th Cir. 1986). I will hold a status conference with the parties to address scheduling.

For the reasons stated,

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED** with respect to the issue of whether Casillas is an employer, and defendant Casillas is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment is **DENIED** with respect to the issue of whether Mark Murphy is an employer.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment with respect to plaintiffs' retaliation claims is **DENIED WITHOUT PREJUDICE.** Defendants may refile a motion for summary judgment with respect to the retaliation issue.

**IT IS FURTHER ORDERED** that plaintiffs' motion to amend is **GRANTED.**

**IT IS FURTHER ORDERED** that defendants' motion to strike is **DENIED** as moot.

**IT IS FURTHER ORDERED** that plaintiffs' motion to supplement the evidence is **DENIED** as moot.

**FINALLY, IT IS ORDERED** that a telephonic status conference will be held on **August 3, 2006, at 11:00 a.m.,** so that the parties may establish a new briefing schedule for defendants' motion for summary judgment.

Dated at Milwaukee, Wisconsin, this 14th day of July, 2006.

s/Lynn Adelman
LYNN ADELMAN
U.S. District Judge