# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**NAU HERNANDEZ, JOSE L. HERNANDEZ,**
**LUIS E. MARTINEZ, FRANCISCO VALLADOLID,**
**OSCAR F. CRUZ, HERBERTO RAMIREZ**              **Case No. 05-C-303**
**and SAUL MORALES,**
                              **Plaintiffs,**

            **v.**

**CITY WIDE INSULATION OF MADISON, INC.**
**d/b/a Builder's Insulation,**
**MARK MURPHY and TROY WETZEL,**
                              **Defendants.**

---

## DECISION AND ORDER

Plaintiffs Nau Hernandez ("N. Hernandez"), Jose Hernandez ("J. Hernandez"), Luis Martinez, Francisco Valladolid, Oscar Cruz, Herberto Ramirez and Saul Morales bring this action against City Wide Insulation of Madison ("CWI"), its owner Mark Murphy and its agent Troy Wetzel under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Plaintiffs, insulation installers, allege that defendants failed to pay them overtime wages and retaliated against them for complaining about it. All defendants now move for partial summary judgment as to each plaintiff's retaliation claim.

## I. BACKGROUND

Plaintiffs worked for CWI installing insulation in new homes in the Germantown area until they were fired or quit. Troy Wetzel manages CWI's Germantown branch and is assisted in doing so by Alfonso Casillas, who – among other things – translates for CWI's primarily Mexican workforce. When plaintiffs worked for CWI, they would arrive each morning at the CWI office, receive their work orders from Wetzel and Casillas and then drive equipment

trucks to the various job sites to work. Plaintiffs allege that they generally worked about sixty hours per week, though defendants dispute this figure.

In November 2002, CWI's approximately twenty-five employees voted to join a carpenter's union. A few months later, CWI changed its compensation system. Previously, employees had been paid by the hour; as of January 2003, they were paid under a "job-rate" system of compensation. Under this system, pay was determined by objective factors, including the square footage and geographic location of a job, and by the subjective difficulty of the job as determined by Wetzel. Apparently, most or all CWI employees disliked the new compensation system. Plaintiffs allege that defendants failed to pay them any earned overtime during the job-rate compensation period. Plaintiffs allege that they regularly complained to Wetzel, Casillas and others about paychecks that inaccurately represented the number of hours they worked, low pay and lack of overtime pay.

On September 30, 2004, Wetzel held an employee meeting to discuss several policy matters. Wetzel, through the interpretation of Casillas, told employees (among other things) that they would have to obtain permission before working overtime hours, would have staggered start times and would have to fuel the company vehicles after, rather than before, going to their assignments. The workers became angry and, after conferring with union representatives Gregory Sefcik and Arcadio Perez, walked off the job. In subsequent days, the employees picketed work sites. After this strike, CWI agreed to temporarily return to an hourly wage, though with strict production requirements.

Also after the strike, the union filed an unfair labor practice charge with the National Labor Relations Board ("NLRB" or "board"). Some of the present plaintiffs filed affidavits and testified before the board on behalf of the union, while some other employees filed affidavits supporting CWI. The affidavits generally related to the circumstances surrounding the

walkout and strike and to claims of retaliation against union supporters.  The parties do not explain the precise issue before the NLRB or indicate what became of the case.  However, ultimately, each plaintiff either quit or was terminated, and the remaining employees voted to decertify the union.

I will cite to additional facts in the course of my decision.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In evaluating a motion for summary judgment, I must draw all inferences in a light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.  FLSA RETALIATION STANDARD

The Fair Labor Standards Act, first enacted in 1938, sets federal standards for a minimum wage and maximum working hours, requires equal pay for men and women, and regulates child labor.  Its overtime provision requires employers to compensate employees for hours worked over 40 per week at a rate not less than one and one-half times the regular rate.  29 U.S.C. § 207.  Where an employer pays an employee on a "piece-rate" basis, i.e. by the job or by the product, FLSA regulations establish a mathematical method for determining the proper overtime rate of pay and require that the employer pay such rate for each hour worked over forty per week.  29 C.F.R. § 778.111.

-3-

The FLSA prohibits employers from retaliating against an employee who has asserted his FLSA rights. Specifically, an employer may not discriminate against an employee who has (1) filed a complaint or instituted a proceeding under or related to FLSA; (2) testified or is about to testify in an FLSA proceeding; or (3) served or is about to serve on an industry committee. 29 U.S.C. § 215(a)(3). A retaliation plaintiff may survive summary judgment in one of two ways. First, he can point to evidence from which a jury could directly find retaliation. Second, he can use the familiar McDonnell-Douglas burden-shifting method. Under either method, the plaintiff must show that he participated in FLSA-protected activity and that he suffered an adverse action. Under the direct method, the plaintiff additionally must provide substantial evidence that the employer was motivated at least in part by the plaintiff's protected conduct. In the past, there has been some confusion as to whether the direct method of proof required direct, rather than circumstantial, evidence. However, the Seventh Circuit has made it clear that, notwithstanding the use of the term "direct," the direct method of proof may rely on strong circumstantial evidence. Sylvester v. SOS Children's Villages Ill., 453 F.3d 900, 902-04 (7th Cir. 2006).[1]

Under the McDonnell-Douglas framework, after showing that he engaged in protected activity and thereafter suffered an adverse action, a plaintiff must establish a prima facie case of retaliation by showing that he was performing his job satisfactorily and that a similarly situated employee who did not engage in the protected activity was not subjected to the adverse employment action. Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640,

---

[1]An example of direct evidence directly proving motivation could be an employer's statement that she is firing an employee for filing an FLSA complaint. Circumstantial evidence directly proving motivation could be "suspicious timing, ambiguous statements . . . behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." Troupe v. May Stores, 20 F.3d 734, 736 (7th Cir. 1994).

642-44 (7th Cir. 2002); see also  Cichon v. Exelon Generation Co., L.L.C., 401 F.3d 803, 810

(7th Cir. 2005) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973)).  If

the plaintiff establishes a prima facie case under this method, the burden then shifts to the

defendant to offer a legitimate reason for the adverse action.  Stone, 281 F.3d at 644.  If the

defendant does so, and the plaintiff does not rebut the defendant's evidence, then the

defendant is entitled to summary judgment.  Id.  If there is a genuine dispute of material fact

as to whether the employer's proffered reason is pretextual, then summary judgment is

inappropriate.  Id.

## IV.  DISCUSSION

Defendants argue that § 215(a)(3) is inapplicable because plaintiffs can point to no

evidence that they engaged in FLSA-protected activity or that they suffered any adverse

action.  In addition, they assert that plaintiffs are unable to avoid summary judgment using

either the direct or the indirect method of proof.

**A.      Protected Activities**

**1.      Applicable Law**

A majority of courts, including eight federal circuit courts, have interpreted § 215(a)(3)

as protecting not only formal complaints to the Labor Department but also informal complaints

to an employer.  Lambert v. Ackerley, 180 F.3d 997, 1003 (9th Cir. 1999) (collecting cases).

The Second and Fourth Circuits have found otherwise.  Lambert v. Genesee Hosp., 10 F.3d

46, 55 (2d Cir. 2003); Ball v. Memphis Bar-B-Q Co. Inc., 228 F.3d 360, 364 (4th Cir. 2000).

The Seventh Circuit has not directly addressed the issue.  See Crowley v. Pace Suburban

Bus Div. of Reg'l Transp. Auth., 938 F.2d 797, 798 n.3 (7th Cir. 1991) (stating that this

question did not need to be resolved in the case).  However, it has affirmed a broad

interpretation of FLSA's retaliation provision, see, e.g., Sapperstein v. Hager, 188 F.3d 852,

857 (7th Cir. 1999); <u>Avitia v. Metro. Club</u>, 49 F.3d 1219, 1225-26 (7th Cir. 1995), and district courts in this circuit have sided with the majority, <u>Skelton v. Am. Intercont'l Univ. Online</u>, 382 F. Supp. 2d 1068, 1076 (N.D. Ill. 2005); <u>Wittenberg v. Wheels, Inc.</u>, 963 F. Supp. 654, 658 (N.D. Ill. 1997).

I agree with the majority of courts that § 215(a)(3) covers informal complaints to an employer. The plain text of the section is quite broad. It prohibits an employer from retaliating against an employee who "has filed any complaint . . . under or related to this chapter." § 215(a)(3). The terms "any" and "related to" support an interpretation that protects an employee who files a complaint with his employer regarding an FLSA violation.[2] Further, the section separately covers "institut[ing] any proceeding under or related to this chapter." <u>Id.</u> When an employee files a complaint with the Department of Labor, he institutes an FLSA proceeding. Thus, it does not make sense to read the word "complaint" to protect only the formal filing of a complaint with the Department of Labor, as such reading would render superfluous the clause protecting the institution of an FLSA proceeding. <u>See</u> <u>Nat'l Endowment for the Arts v. Finley</u>, 524 U.S. 569, 609 (1998) ("Statutory interpretations that render superfluous other provisions in the same enactment are strongly disfavored.").

The courts that have found that § 215(a)(3) covers only formal complaints to the government have rested on the "unambiguous" text of the section and declined to look further into the section's history and purpose. <u>See, e.g.</u>, <u>Lambert</u>, 10 F.3d at 55. However, as noted above, the text – if it is plain – points in the opposite direction. And to the extent that the text is ambiguous, the statute's history and purpose support a broad interpretation. Congress

---

[2]As the Ninth Circuit opined, Congress likely used this broad language in recognition of the fact that many employers ask that employees lodge a complaint with it before turning to a government agency, to permit the employer to consider correcting any problem on its own. <u>Ackerley</u>, 180 F.3d at 1004.

enacted the FLSA as part of the sweeping humanitarian reforms of the New Deal, and the Supreme Court long ago determined that the FLSA is to be construed broadly in order to effectuate its remedial purpose. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944). Further, Congress enacted the FLSA's retaliation provision in order to encourage employees to enforce their FLSA rights. Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292-93 (1960). As the First Circuit explained:

> A narrow construction of the anti-retaliation provision could create an atmosphere of intimidation and defeat the Act's purpose in § 215(a)(3) of preventing employees' attempts to secure their rights under the Act from taking on the character of a calculated risk. Such circumstances would fail to foster a climate in which compliance with the substantive provisions of the Act would be enhanced.

Valerio v. Putnam Assocs., Inc., 173 F.3d 35, 43 (1st Cir. 1999) (internal citations and quotations omitted).

"Of course, not all abstract grumblings will suffice to constitute the filing of a complaint with one's employer." Valerio, 173 F.3d at 43; see also Ackerley, 180 F.3d at 1007 (stating that "not all amorphous expressions of discontent related to wages and hours constitute complaints filed within the meaning of § 215(a)(3)"). A complaint can be either oral or in writing and need not cite to the FLSA by name. Moore v. Freeman, 355 F.3d 558, 562 (6th Cir. 2004); Ackerley, 180 F.3d at 1008; EEOC v. Romeo Cmty Schs., 976 F.2d 985, 989 (6th Cir. 1992). However, even a written complaint may not suffice if it is nothing more than a general complaint about low wages or unfair wages. See Porter v. Roosa, 259 F. Supp. 2d 638, 656 (S.D. Ohio 2003); Dronet v. Lafarge Corp., Case No. 00-2656, 2001 U.S. Dist. LEXIS 8565, at *9-10 (E.D. La. June 20, 2001). Rather, a complaint must relate to the FLSA, if not by name then by reference to something regulated by the FLSA – minimum wage, overtime pay, equal pay between the sexes or child labor. See Moore, 355 F.3d at 562;

Ackerley, 180 F.3d at 1007-08; EEOC v. White & Son Enters., 881 F.2d 1006, 1008 (11th Cir. 1989); Brennan v. Maxey's Yamaha, 513 F.2d 179, 181 (8th Cir. 1975).

Finally, it is clear that where an employee makes a sufficient complaint, the anti-retaliation provision protects the complainant as long as she acts in good faith, whether or not the complaint identifies an actual violation. Sapperstein, 188 F.3d at 857.

### 2. Application of Law to Facts

Plaintiffs assert that they all orally complained to Wetzel and Casillas about numerous wage issues, including CWI's failure to pay them overtime rates for hours worked over forty per week.[3] Further, each of the plaintiffs assert that they engaged in union-supportive activities and that each of these activities should be construed as an indirect FLSA complaint to CWI or the institution of an FLSA proceeding. Specifically, N. Hernandez, J. Hernandez, Martinez, Ramirez and Morales voted for the union and met with the union representative about wage complaints; Cruz met with the union representative about wage complaints; J. Hernandez, Martinez, Ramirez, Morales and Cruz attended union meetings; N. Hernandez, J. Hernandez, Valladolid and Cruz participated in the walkout and strike; N. Hernandez and J. Hernandez provided the NLRB with affidavits regarding unfair labor practices; and N. Hernandez and Valladolid testified before the NLRB. N. Hernandez, J. Hernandez and Valladolid assert that I should consider their participation in the NLRB proceeding, namely their filing of affidavits and/or testifying before the board, not only as an FLSA complaint but as testimony in an FLSA proceeding.

_____

[3]Some of the plaintiffs allege that they complained by refusing to sign pay sheets that they believed mistakenly represented that they worked under forty hours. I consider this to be an extension of plaintiffs' oral complaints, as plaintiffs' failure to sign papers can only be considered complaints about overtime to the extent plaintiffs' accompanied their actions with an explanatory statement.

First, I will discuss plaintiffs' union activities, then I will discuss their other complaints.

### a.    Union Activities

An employee can challenge actions taken against him in retaliation for a union representative's FLSA complaint made on the employee's behalf.  Forsberg v. Pac. N.W. Bell Tel. Co., 623 F. Supp. 117, 126 (D. Or. 1986); see also Ackerley, 180 F.3d at 1007-08 (finding that two employees' complaint to management on behalf of themselves and four other employees served as a protected complaint for each of the six employees).  Further, an employee can challenge under the FLSA actions taken against him in retaliation for protesting an FLSA violation through a job action.  See Colindres et. al. v. Quietflex Mfg., No. 01-4319, 2002 U.S. Dist. LEXIS 27782, at *28-29 (S.D. Tex. June 22, 2002).

However, in the present case, plaintiffs do not argue that their union representatives complained of FLSA violations on their behalf, that the September walkout and strike protested FLSA violations or that the NLRB proceeding related to FLSA violations.  And the record indicates otherwise.  Union representatives testified that they never complained about any past failure to pay overtime wages and that contract negotiations focused on conceptual issues.  (Pls.' Proposed Findings of Fact ("PFOF") Ex. 40 at 22-30 (Union Representative's Dep.).)  And the record contains no evidence that anyone advertised the strike as a protest against past FLSA violations.  Rather, the evidence indicates that the strike related to some unpopular new policies, including a requirement that employees obtain permission before working more than forty hours in a week, as well as CWI's job-rate system of compensation.  Finally, no evidence shows that the NLRB proceeding resolved a complaint about FLSA violations.

Essentially, plaintiffs argue that they believed that their union representatives would complain about FLSA violations and therefore I should treat their activities in support of the

union as complaints about FLSA violations.[4]  Further, they argue that their subjective reasons for participating in the walkout and strike included concerns about overtime pay.  However, the FLSA does not prohibit an employer from taking action against an employee for any activity that the employee might have subjectively believed would advance his FLSA rights.  Rather, it prohibits employers from taking action against an employee for: (1) filing a complaint or instituting an FLSA proceeding; (2) testifying in an FLSA proceeding; or (3) serving on an industry committee.  § 215(a)(3).  In addition, plaintiffs argue that the FLSA protects complaints about unpaid overtime made to union representatives even if the union never relayed such complaints to anyone.  However, the text of § 215 is not so broad that it can be fairly read to protect such complaints.[5]  See Bernier v. Morningstar, Inc., No. 06-1617, 2007 U.S. App. LEXIS 16933, at *16 (7th Cir. July 17, 2007) (stating that "'an employer cannot retaliate when it is unaware of any complaints'") (quoting Sitar v. Ind. Dept. of Transp., 344 F.3d 720, 727 (7th Cir. 2003)).

Of course, this is all somewhat confusing because federal law prohibits retaliation against employees based on their union support.  See 29 U.S.C. § 158.  However, plaintiffs filed this case under the FLSA and have never asserted – not even in response to defendants' partial summary judgment motions – a retaliation claim under the Labor Management Relations Act.  I will not fashion a new claim for them.

––––––––––––––––––––

[4]Oddly, they also argue without any support that I should consider their actions in support of the union as the institution of an FLSA proceeding.  I reject this argument without further discussion.

[5]The case that plaintiffs cite in support of their argument, Legutko v. Local 816, Int'l Bhd. of Teamsters, 606 F. Supp. 352, 358-59 (E.D.N.Y. 1985), is inapplicable.  Legutko involved an unusual situation in which the plaintiffs brought an FLSA suit against a union.  See id.

### b.    Other Complaints

Each plaintiff has presented evidence that he orally complained to Wetzel and/or Casillas about CWI's failure to pay him overtime rates for hours worked over forty per week. (Feb. 12, 2007 Neuser Aff. Ex. 15 at 2-3 (N. Hernandez Response to Interrogs.); id. Ex. 13 at 7 (N. Hernandez Nov. 29, 2006 Dep.); id. Ex. 17 at 2-3 (J. Hernandez Response to Interrogs.); id. Ex. 12 at 5 (J. Hernandez Nov. 28, 2006 Dep.); id. Ex. 20 at 2-4 (Ramirez Response to Interrogs.); id. Ex. 23 at 2-4 (Morales Response to Interrogs.); id. Ex. 31 at 2-4 (Martinez Response to Interrogs.); id. Ex. 3 at 15 (Martinez Nov. 27, 2006 Dep.); id. Ex. 26 at 2-4 (Vallidolid Response to Interrogs.); Feb. 12, 2007 Neuser Aff. Ex. 15 at 12-13 (Cruz Mar. 12, 2007 Dep.); id. Ex. 16 at 2-5 (Cruz Response to Interrogs.).)  As stated above, the FLSA protects such complaints of unpaid overtime.  See Skelton, 382 F. Supp. 2d at 1076.

In their depositions, all plaintiffs referred to numerous general complaints – most commonly complaints about the job-rate system of compensation – that are unrelated to the FLSA.  Defendants correctly respond that such complaints amount to nothing more than "abstract grumblings," Valerio, 173 F.3d at 43.  However, I must separate these general wage complaints from plaintiffs' more specific complaints about overtime pay, which the FLSA protects.  Defendants also argue that plaintiffs' statements are self serving.  This is true, but defendants present no evidence, not even self-serving affidavits, that plaintiffs did not complain about a lack of overtime pay for hours worked over forty per week.  As such, the self-serving nature of plaintiffs' statements does not defeat their claims.

Finally, defendants argue that several plaintiffs contradicted themselves in discussing their complaints.  As to all plaintiffs except Morales, any arguable contradictions go to credibility and are not appropriate grounds for summary judgment.  As to Morales, the analysis is different.  In response to defendants' interrogatories, Morales stated, like all of the

other plaintiffs, that he complained to Wetzel and Casillas about the lack of overtime wages. (Feb. 12, 2007 Neuser Aff. Ex. 23 at 2-4.)  However, in a deposition taken after responding to such interrogatories, Morales stated that he did not complain about the failure of CWI to pay him overtime rates.  (Id. Ex. 10 at 12-13.)  This is not simply an arguably inconsistent statement.  Rather, it is a refutation of his earlier statement, and I must conclude that Morales did not orally complain to Wetzel or Casillas regarding CWI's failure to pay overtime wages. Thus, the record contains no evidence that Saul Morales engaged in FLSA-protected activity, and his retaliation claim fails at this early stage.[6]

As to N. Hernandez, the record contains evidence of one additional FLSA complaint. In his first affidavit to the NLRB, signed October 18, 2004, N. Hernandez complained of CWI's failure to pay him for hours worked over forty per week.  (Pls.' PFOF Ex. 20, Oct. 18, 2005 N. Hernandez Aff. at 1-2 (stating that although N. Hernandez worked approximately seventy to seventy-five hours per week, he was told to never report more than forty hours per week).) While the other NLRB affidavits discuss only the circumstances surrounding the strike and allegations regarding retaliation for union support, N. Hernandez's first affidavit implicates FLSA's overtime provision and arguably its minimum wage provision.  While as stated above, the record contains no evidence that the NLRB proceeding constituted an FLSA proceeding, N. Hernandez's statement is nevertheless an FLSA complaint to the government.[7]

---

[6]Vallidolid's deposition testimony comes close to similarly refuting his response to defendants' interrogatories.  (See Feb. 12, 2007 Neuser Aff. Ex. 2 at 15.)  However, such testimony is not as clear as Morales's, and given that I ultimately reject Vallidolid's claim under the similarly situated employee prong, I will assume that Vallidolid's deposition testimony does not directly conflict with his response to defendants' interrogatories.

[7]Defendants argue that N. Hernandez has failed to present evidence that CWI knew of his affidavits to the NLRB.  However, it is reasonable to infer that CWI read affidavits filed in a case initiated against it and defendants have failed to provide any evidence to the contrary.  As such, drawing all inferences in the light most favorable to the nonmoving party, I assume at this stage of the case that CWI read the affidavit.

**B.    Adverse Actions**

**1.    Applicable Law**

For an employer's action to meet the second prong of the prima facie test, a court must find that a reasonable employee would find the challenged action materially adverse, meaning that it might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. v. White, 126 S. Ct. 2405, 2415 (2006) (internal quotations omitted).  This standard is somewhat more relaxed than the "terms and conditions of employment" standard used in non-retaliation discrimination cases, in recognition of the federal discrimination statutes' goal of private enforcement. Id. at 2414. For one, the adverse action need not be an employment action at all. Id.  However, it still requires an element of materiality, so that "petty slights, minor annoyances, and simple lack of good manners" will not suffice. Id. at 2415.

Whether an action is materially adverse must be determined on a case-by-case basis, always from an objective point of view with an eye toward the surrounding circumstances, expectations and relationships. Id. "An adverse employment action 'might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" Moser v. Ind. Dep't of Corr., 406 F.3d 895, 904 (7th Cir. 2005) (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)).

**2.    Application of Law to Facts**

Plaintiffs assert that after engaging in protected activities, CWI decreased their weekly take-home pay and imposed unwarranted disciplinary warnings and suspensions.  All plaintiffs except Ramirez assert that CWI assigned them jobs that took longer and/or involved more

-13-

travel time and therefore paid less. Ramirez asserts that on many days CWI denied him jobs and that it ultimately terminated his employment. J. Hernandez further asserts that CWI assigned him the worst company vehicles. Finally, Valladolid asserts that CWI provided him with job sheets more slowly than other employees.[8]

First, I note that while a decrease in pay clearly would be material and adverse, a thorough examination of plaintiffs' filings indicates that plaintiffs are not asserting a free-standing wage reduction claim. In other words, plaintiffs do not argue that CWI paid them at a lower rate or under an inferior compensation system than other employees. Rather, plaintiffs argue that as a result of suspensions, inferior work assignments and denial of work, their pay decreased and was lower than that other employees. As such, plaintiffs' take-home pay assertions may support their arguments that the suspensions, inferior assignments and denial of work were materially adverse, but I will not analyze them independently.

The disciplinary actions are all material and adverse. The evidence indicates that CWI wrote up each plaintiff for numerous problems and disciplined several of them beyond a simple write-up. Defendants suspended N. and J. Hernandez three times for inadequate production, terminated Martinez for failing to report and continuing to drive company vehicles with a suspended driver's licence, and suspended Ramirez for over-reporting hours worked. The threat of termination, suspension and the written warnings that precede suspension and termination would dissuade a reasonable worker from filing an FLSA complaint. <u>See Burlington Northern</u>, 126 S. Ct. at 2415. Further, the evidence indicates that defendants denied Ramirez work on many days in early 2003, and the denial of work is material and adverse, given that Ramirez could not earn money for each day that he did not work. <u>See id.</u>

---

[8]Valladolid does not make clear what he means by this, and plaintiffs have not illuminated the assertion.

If defendants assigned plaintiffs harder and more distant jobs after they complained, defendants' actions would be material and adverse because the evidence indicates that jobs involving more work and longer travel times could lead to lower overall pay.[9]  However, it is difficult to gauge whether plaintiffs have presented sufficient evidence of bad job placements. Each plaintiff asserts that defendants assigned him worse jobs after the union vote and then again after the walkout and strike.  However, as stated above, the present FLSA case is not concerned with the vote and strike, but rather with plaintiffs' complaints regarding unpaid overtime wages, and each plaintiff has stated that he complained throughout his period of employment.  As to whether defendants paid plaintiffs less than other employees who did not complain, it seems more appropriate to address the issue in comparing plaintiffs with other employees.  For now, I will simply assume that defendants assigned bad jobs to each plaintiff and that such acts constituted adverse actions, and I will analyze the issue further when I discuss the similarly-situated employee prong.

The remaining proffered adverse actions – assigning inferior vehicles and providing job sheets slowly – are not material.  They would not dissuade a reasonable worker from filing an FLSA complaint.  Hernandez has not asserted that defendants assigned him dangerous vehicles, and Valladolid has not claimed that defendants provided him with job sheets so late as to reduce his pay or otherwise injure him.  Thus, these actions amount to nothing more than "petty slights" or "minor annoyances."  See Burlington Northern, 126 S. Ct. at 2415.

---

[9]Under either of CWI's pay systems, inferior job placements could result in decreased earnings.  There is evidence that during the job-rate pay period, Wetzel did not always sufficiently increase the pay for a job based on travel time or longer work, leading to a lower pay rate per hour worked.  Further, during the hourly pay trial period, plaintiffs could only work forty hours per week and could be docked pay for low production.

Case 2:05-cv-00303-LA   Filed 09/07/07   Page 15 of 23   Document 272

**C.    Proving the Case**

Plaintiffs attempt to show retaliation under both the direct and the indirect method of proof.  As to the direct method, plaintiffs primarily point to timing – they argue that defendant reduced their wages immediately after the union vote and decreased them further after the walkout and strike.  However, again, the FLSA does not protect union support.  As such, in the present case, even a clear connection between plaintiffs' union activities and the adverse actions would not benefit them.  The possibility that defendants penalized CWI employees for supporting the union is troubling, but the union appears to have made this argument before the NLRB and it is not the subject of this case.  Plaintiffs do not point to any evidence that directly establishes a causal link between their protected activities – their complaints to Casillas and Wetzel about overtime violations and N. Hernandez's complaint to the NLRB about overtime violations – and the adverse actions.

Thus, I turn to the McDonnell-Douglas framework, focusing on the similarly situated employee prong.  In order to be a proper comparator, a fellow employee need not be identical to a retaliation plaintiff in all respects, but he must be similar in all material respects.  Bio v. Fed. Express Corp., 424 F.3d 593, 597 (7th Cir. 2005).  The qualities that are material depend on the facts of the case.  Spath v. Hayes Wheels Int'l-Ind. Inc., 211 F.3d 392, 397 (7th Cir. 2000).  In most cases, the plaintiff must identify another employee who was similarly situated with respect to performance and qualifications.  Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000).  In addition, the plaintiff must generally cite to other information dependent on the nature of the protected activity and the adverse action.  For example, where a plaintiff claims that the defendant disciplined him more harshly than other employees, he must identify another employee who the defendant disciplined less harshly for similar conduct.  Id. at 617.  "The important question is therefore whether others similarly situated to the

-16-

plaintiff[s], with respect to important matters characterizing the employment relationship, had been treated one way, and the plaintiff[s], having engaged in statutorily protected activity, [were] treated differently." South v. Ill. EPA, No. 05-3621, 2007 U.S. App. LEXIS 17924, at *13 (7th Cir. July 27, 2007).

### 1. All Plaintiffs' Oral Complaints

Plaintiffs all cite to a single set of eight comparators: Javier Nunez, Daniel Martin, Jose Rodrigues, Jaime Gomez, Hugo Gomez, Juan Martin, Gilberto Alcantar and Juan Cervantes. These comparators appear to be similar to plaintiffs in that they performed the same work and were paid under the same compensation scheme. Further, they worked under the same supervisors, Wetzel and Casillas.

However, defendants argue that the comparators are too similar, in that they engaged in the same protected activities as plaintiffs and are thus inappropriate for comparison. Indeed, no employees liked CWI's compensation and work assignment system, and the evidence indicates that all employees engaged in some complaining. For comparison purposes, it is critical that plaintiffs' comparators did not complain of CWI's failure to pay overtime wages. However, plaintiffs do not point to a single piece of evidence in the record, not even a self-serving affidavit, that actually says that the comparators never complained about overtime.[10] Plaintiffs, in depositions, provided very little evidence regarding the

_____

[10]The lack of evidence regarding this critical point is likely attributable to plaintiffs' focus on their union-organizing activities, which I have already rejected as a basis for recovery, rather than their oral overtime complaints.

comparators' complaints at all, and what evidence they provided is unilluminating.[11]  Further, plaintiffs have not presented any other evidence, such as testimony from the comparators, Wetzel or Casillas, indicating that the comparators did not orally complain of overtime violations.  Given this lack of evidence, I cannot find that plaintiffs have met their burden of producing evidence of a similarly situated employee who did not orally lodge overtime complaints for comparison purposes.  See Rogers, 320 F.3d at 753 (dismissing the plaintiff's retaliation claim on similar grounds).

I note that even if the evidence showed that the comparators did not complain about overtime, most of the plaintiffs' retaliation claims would have other fatal flaws.  As to discipline, most of the plaintiffs have failed to present evidence that any employee is suitable for comparison.  Defendants warned Martinez about low production, improper work and promoting an organization (presumably the union) on company time and terminated him for failing to report that his license had been suspended and driving company vehicles on a suspended license.  Defendants wrote up Ramirez twice for failing to show up to work and once for low production and suspended him for misrepresenting the number of hours that he

_____

[11]In his first deposition, Vallidolid suggested that the employees from the same Mexican town as Casillas did not complain, but he did not name such employees.  (Pls.' PFOF Ex. 8 at 70.)  In his second deposition, Vallidolid stated that he didn't remember hearing anyone but the plaintiffs complaining, but also stated that he did not know who the comparators were. (Id. Ex. 39 at 47-49, 59.)  J. Hernandez stated that some employees did not complain, but it is not clear whether he is referring to all of the comparators, some of the comparators, or some other group of workers, and it is not clear what they did not complain about.  (Id. Ex. 33 at 19.)  Martinez stated that he might have heard at least five of the eight comparators complain about something – Javier Nunez, Daniel Martin, Jaime Gomez, Hugo Gomez, and Gilberto Alcantar.  (Id. Ex. 35 at 6-8.)  Morales stated that Daniel Martin did complain, though he was not sure if he complained about overtime.  (Id. Ex. 37 at 5-6.)  Finally, Cruz stated that everyone complained and that Wetzel treated everyone badly.  (July 18, 2007 Neuser Aff Ex. 15 at 6, 13-14.)
Further, the evidence indicates that all of the comparators failed to sign their time sheets on different occasions, and thus to the extent that the failure to sign a time sheet is evidence of an FLSA complaint, as plaintiffs assert, the comparators also complained.

worked and lying about it when confronted. Defendants wrote up Vallodolid for getting into an accident with a company vehicle and misrepresenting the number of hours that he worked. And defendants wrote up Cruz for failing to properly direct Vallodolid while he backed the company vehicle, failing to complete his work on the day of the truck incident and failing to show up at work. With respect to each of these disciplinary actions, the record contains no admissible evidence that any comparator engaged in similar conduct without similar consequences.

As to Ramirez's claim that defendants denied him work on more days than comparators, he fails to present any useful evidence with which to make a comparison. He provides evidence that defendants sent him home for lack of work on all but seven of the fifty-five days immediately following the union vote but gave comparators Nunez, Rodriguez and Daniel Martin work on twenty-four, thirty-three and twenty-eight days, respectively. However, given that Ramirez claims that he complained about the lack of overtime pay for the entire time that he worked there, fifty-five days that have no relation to his protected activity do not provide a meaningful point of comparison.[12] Ramirez's evidence does not preclude the possibility that he worked more days than the comparators during the fifty-five days preceding or following the cited period.

Finally, plaintiffs have presented no comparator evidence backing up the claims of N. Hernandez, J. Hernandez, Martinez, Valladolid and Cruz that defendants assigned them lower-paying jobs. In their responses to interrogatories and depositions, each plaintiff generally stated that defendants assigned them worse jobs than other employees but did not offer meaningful facts. Plaintiffs could show that defendants assigned them worse jobs by

---

[12]Again, Ramirez's proffered evidence indicates that Ramirez believed that the real reason that defendants denied him work was his union support, not his FLSA complaints.

showing that it paid them less than other employees for days actually worked. But in their summary judgment responses, plaintiffs only refer to evidence of their weekly pay, which is unhelpful because it is affected by suspensions, denials of work and other absences. Without plaintiffs' guidance, I examined the daily pay figures provided in their expert's report and found no evidence that plaintiffs earned less than the only comparators whose daily pay was examined. Plaintiff's expert looked at five periods corresponding with the different incarnations of CWI's ever-shifting compensation system. The figures show only that the daily pay of both the plaintiffs and the relevant comparators fluctuated quite a bit from day to day and between compensation systems. Most plaintiffs and all non-plaintiffs saw their pay decrease when CWI switched from an hourly to a job-rate system. All plaintiffs and non-plaintiffs still working for CWI when it instituted the probationary hourly system saw their daily pay increase and then after the return to the job-rate system again saw their pay drop. In each period, among all of the plaintiffs and non-plaintiffs, a plaintiff (rather than a comparator) earned the highest daily pay of all analyzed employees.[13]

### 2. N. Hernandez's Written Complaint

As to N. Hernandez's additional complaint in his October 2004 affidavit to the NLRB, it is clear that the comparators did not file a similar complaint with the NLRB. In fact, they submitted affidavits in support of CWI to the NLRB, stating that union representatives had lied to Wetzel and Casillas regarding the September walkout.[14] And even assuming that the comparators orally complained about overtime, N. Hernandez's complaint to a federal agency

---

[13]It may be that I am misinterpreting plaintiff's expert's report. However, even if this were so, it would not be a proper ground for reconsideration of the present decision given that plaintiffs failed to analyze the daily pay figures in their court filings.

[14]The comparators each stated that the union representatives told Wetzel and Casillas that he was leaving work because he had a stomachache, though he did not have a stomachache.

places him in a separate (arguably stronger) protected category. Thus I turn to whether any of the comparators were materially similar to N. Hernandez for the purpose of his claim that defendants disciplined him in retaliation for his protected conduct.[15]

In January 2005, CWI instituted the probationary hourly wage period, during which Wetzel announced that failure to meet strict production standards would result in progressive discipline. In February 2005, Wetzel cited N. Hernandez for failure to meet production standards four weeks in a row, the last three of which resulted in unpaid suspensions. N. Hernandez has presented evidence that in each instance, defendants cited him for failing to meet uncommunicated and/or impossible standards. (Pls.' PFOF Ex. 20 (J. Hernandez Aff. and Mar. 8, 2005 N. Hernandez Aff.).) Defendants have presented no rebuttal evidence. Given the subjective, individualized way that Wetzel set production standards, making comparisons with these facts is difficult. It is not clear exactly what N. Hernandez did wrong and how his work compared to that of coworkers. Defendants suspended him and his partner, J. Hernandez, far more often than any other CWI employee and in fact suspended only one other employee at all. Of course, defendants may well have suspended them more because they performed worse.

Ultimately, the similarly situated employee prong is flexible, and courts are to apply a "common sense" factual inquiry to in keeping to its purpose – eliminating confounding variables in order to isolate the protected activity as the cause of the adverse action. Humphries v. CBOCS West, Inc., 474 F.3d 387, 404-05 (7th Cir. 2007). Further, "it must be

_____

[15]N. Hernandez also claims that defendants assigned him worse jobs than other employees, but as stated above, the evidence does not support this claim. In fact, for the two analyzed pay periods following N. Hernandez's written complaint, it appears that he earned a higher daily wage for days worked than any other examined employee. In the third period, when CWI returned to a job-rate system of compensation, his daily pay dropped but so did that of the other employees.

remembered that the plaintiff's evidence on a prima facie case need not be overwhelming or even destined to prevail." Id. at 405. Defendants chose to use a complex, subjective test for production discipline – one that was susceptible to abuse. I am hesitant to find that such test immunizes defendants from a retaliation suit regarding production discipline. Further, to the extent that N. Hernandez legitimately failed to meet reasonable production schedules, defendants twice cited two comparators, Jaime Gomez and Gilberto Alcantar, for low production during the probationary hourly wage period but did not suspend them the second time. Thus, it is minimally clear that N. Hernandez has presented adequate comparator evidence that his first suspension was suspicious, and I cannot preclude an inference that all of N. Hernandez's low production citations and resulting suspensions were based on a retaliatory motive.

## V. CONCLUSION

Defendants have not provided evidence of a legitimate business reason for suspending N. Hernandez on his second citation for low production, though it did not suspend other employees after two similar infractions. Nor have defendants provided information regarding any of N. Hernandez's suspensions suggesting the legitimate business purpose behind them. As such, I conclude that there is a genuine issue of material fact as to whether defendants imposed disciplinary suspensions on N. Hernandez in whole or in part to order to retaliate against N. Hernandez for his FLSA complaint to the NLRB.

None of the other plaintiffs have established such a prima facie case, and I will therefore dismiss their retaliation claims.

**Therefore,**

**IT IS ORDERED** that defendants' motion for partial summary judgment as to Nau Hernandez's retaliation claim is **GRANTED IN PART AND DENIED IN PART** as described herein.

**IT IS FURTHER ORDERED** that defendants' motion for partial summary judgment as to Jose L. Hernandez's retaliation claim is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion for partial summary judgment as to Herberto Ramirez's retaliation claim is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion for partial summary judgment as to Saul Morales's retaliation claim is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion for partial summary judgment as to Luis E. Martinez's retaliation claim is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion for partial summary judgment as to Francisco Vallidolid's retaliation claim is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion for partial summary judgment as to Oscar Francisco Cruz's retaliation claim is **GRANTED**.

**IT IS FURTHER ORDERED** that a telephonic status conference will be held on October 9, 2007 at 3:30 to determine how to proceed with plaintiffs' remaining claims. The court will initiate the call.

Dated at Milwaukee, Wisconsin this 7 day of September, 2007.

/s_____
LYNN ADELMAN
District Judge